UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES of America,<br>  P*laintiff*,<br>  v.<br>Adrian PEELER,<br>  *Defendant*. | Case No.<br>3:99-cr-00067-MPS-2 |

**RULING ON SECOND MOTION FOR REDUCTION IN
SENTENCE UNDER 18 U.S.C. §3582(c)(1)(A)**

Defendant Adrian Peeler, who is serving a term of imprisonment at FCI McDowell in West Virginia post-conviction on conspiracy to possess with intent to distribute and to distribute cocaine base, moved to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. ECF No. 439. Peeler claims that the need to care for his father, his age at the time of the criminal conduct, his rehabilitation efforts, and the threat of contracting a virus in custody present extraordinary and compelling circumstances warranting his release under 18 U.S.C. § 3582(c)(1)(A). *Id.* at 1. The Government filed a memorandum in opposition (ECF No. 448), Peeler filed a response/reply to the Government's memorandum in opposition (ECF No. 455), and the Government filed a sur-reply (ECF No. 458). I have carefully considered these materials and the exhibits attached thereto. I have also reviewed the original presentence report (ECF No. 390-5) and the two supplemental reports. ECF Nos. 390 and 425. For the reasons that follow, Peeler's motion is denied.

I.  BACKGROUND

On August 5, 1999, a grand jury returned a superseding indictment against Peeler charging him with one count of conspiracy to possess with intent to distribute and to distribute cocaine base (Count One), three counts of possession with intent to distribute and distribution of cocaine

1

base (Counts Two, Three and Four), and two counts of continuing criminal enterprise (Counts Five and Six). ECF No. 80. On November 9, 1999, Peeler pled guilty to Count One, and on May 31, 2000, he was sentenced to 420 months in prison and 10 years of supervised release. ECF Nos. 176, 229. After Peeler appealed, the Second Circuit affirmed the judgement. ECF No. 290. Peeler filed a motion to vacate his conviction under 28 U.S.C. § 2255. ECF No. 314. This court denied it, and the Second Circuit dismissed the appeal. ECF Nos. 353, 355, 362.

On January 23, 2020, Peeler moved to reduce his sentence pursuant to the First Step Act, Pub. L. No. 115-391, § 404. ECF No. 388. On October 30, 2021, Peeler moved to reduce his sentence under 18 U.S.C.A. § 3582(c)(1)(A) and the First Step Act, Pub. L. No. 115-391, § 603. ECF No. 415. On November 16, 2021, the court granted the § 404 motion (ECF No. 388) reducing Peeler's sentence to 180 months consecutive to his state sentence with no credit for time served and 5 years of supervised release. ECF No. 427. The court denied without prejudice the other motion to reduce sentence filed under § 603 (ECF No. 415). ECF No. 427.

On January 11, 2023, Peeler filed this second motion to reduce sentence pursuant to the First Step Act, Pub. L. No. 115-391, § 603, 18 U.S.C.A. § 3582(c)(1)(A). ECF No. 439.

## II.   LEGAL STANDARD

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court ... upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.] 18 U.S.C. § 3582(c)(1)(A).

2

Effective November 1, 2023, the Sentencing Commission amended the policy statement applicable to motions brought under section 3582(c)(1)(A) to conform the policy statement to amendments made by the First Step Act and to expand the list of "extraordinary and compelling reasons" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13.  Previously, the Bureau of Prisons was the gatekeeper for reduction-in-sentence motions brought under Section 3582(c)(1)(A). *United States v. Feliz*, 2023 WL 8275897 at *2 (S.D.N.Y Nov. 30, 2023). The amendment allows the defendant to file such a motion after exhausting remedies within the Bureau of Prisons. *Id.* The changes to U.S.S.G. § 1B1.13 also expanded the list of extraordinary and compelling grounds for a sentence reduction. The amended list includes the defendant's medical circumstances, age, family circumstances (including situations in which the defendant would be the only available caregiver for a child or an incapacitated spouse or parent), abuse by BOP staff, and other reasons that are "similar in gravity" to the enumerated grounds.

## III.   DISCUSSION

### A. Exhaustion

Section 3582 authorizes a defendant to bring a motion for a sentence reduction after he "fully exhaust[s] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or 30 days … lapse[s] from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *United States v. Reid*, 2022 WL 17684667, at *1 (2d Cir. Dec. 15, 2022) (summary order). Peeler has satisfied the exhaustion requirement, ECF No. 439-2 at 4; the government does not contest this. ECF No. 448 at 5.

### B. Extraordinary and Compelling Reasons

#### 1. Peeler's Father's Medical Condition

U.S.S.G. §1B1.13(3) now recognizes "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent," as an extraordinary and compelling circumstance. U.S.S.G. §1B1.13(3)(C). Peeler argues that he needs to be released "to home confinement at his father's residence in Las Vegas, Nevada to care for his ailing and aging father." ECF No. 439-1 at 20. Peeler provides a letter from his father and several of his father's medical records to support his argument that Peeler, Sr. needs Peeler to be his caregiver.

Peeler has the burden to prove that his father is incapacitated. See *United States v. Romano*, 2023 WL 8735203 *2 (E.D.N.Y. Dec. 19, 2023). Peeler submitted medical records indicating that Peeler, Sr. suffers from diabetes, high blood pressure, and arthritis. ECF No. 439-2 at 21. The medical records further indicate that Peeler, Sr.'s diabetes and high blood pressure are controlled with medication (ECF No 439-2 at 21) and that the arthritis in his knee is severe (ECF No. 439-2 at 18). Missing is a medical opinion concerning Peeler, Sr.'s ability to function or care for himself or a recommendation or referral for personal or home health care assistance. See *United States v. Romano* 2023 WL 8735203 *3 (E.D.N.Y. Dec. 19, 2023) (alleged incapacitation of defendant's father did not constitute extraordinary and compelling reason that would justify compassionate release where defendant failed to provide medical evidence or opinions that father would be rendered incapable of self-care as result of radiation).

The letter from Peeler's father describes Peeler, Sr. as "a 100% disabled veteran" and adds kidney issues, anemia, and cataracts to his list of ailments, (ECF No. 439-2 at 9), although the medical records submitted make no reference to kidney issues, anemia or cataracts. Peeler, Sr. describes himself as using a cane and often having difficulty walking short distances. *Id*. Peeler, Sr. also describes activities that he is involved in: he states that "he goes to therapy weekly … to help … with walking" and that he is "part of the men's worship program" at his

church and "on the usher board." *Id*. Without doubt, Peeler, Sr. suffers from several health issues, but his ability to care for himself and to get out of the house without assistance indicate a level of function greater than incapacity. "Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary." *United States v. Ingram*, 2019 WL 3162305 *2 (S.D. Ohio Jul. 16, 2019).

Peeler pleads that his father's condition "make[s] it extremely difficult for him to walk for extended periods of time and complete mundane tasks that we might normally take for granted." ECF No. 439-2 at 7. Again, this is not a description of immobility or inability to care for oneself. "The animating principle of the Family Circumstances category is that there exists an extraordinary and compelling reason for release when the defendant has a close family member who is completely unable to care for himself or herself and for whom the defendant would be the only available caregiver." *United States v. Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020). That Peeler, Sr. lives alone without home health assistance and participates in activities outside the home suggests that he is currently able to care for himself.

Both Peeler and Peeler, Sr. speak about incapacity as a future possibility. Peeler, Sr. worries that he "will not be able to participate in [his church activities] much longer" and that he "will die alone because [he] can no longer care for [him]self." ECF No. 439-2 at 9. Peeler worries that "one day [his father] may have an episode in the night without anyone there to care for him or call for help." ECF No. 439-2 at 7. Evidence submitted by a defendant in support of a compassionate release claim is "only persuasive where those documents" establish the "current medical status" of a parent. *See United States v. Sharma*, 2023 WL 4305054, at *2 (E.D.N.Y. June 30, 2023); *see also United States v. Ayala*, 2020 WL 6626015 at *1 (S.D.N.Y. Nov. 12, 2020) (the Court found the evidence "insufficient to demonstrate the severity of his mother's

5

health condition" because the evidence submitted "has no bearing on his mother's current condition"). The evidence submitted does not persuade me that Peeler, Sr. is currently unable to care for himself.

Peeler also has the burden to "show that he is the only available caregiver for his father." *United States v. Romano*, 2023 WL 8735203, at *3 (E.D.N.Y. Dec. 19, 2023). Peeler, Sr.'s letter, his affidavit, and a one paragraph letter from Peeler's cousin, are the only evidence offered to support the assertion that Peeler is the only available caregiver. Peeler, Sr. states that other relatives cannot care for him because they have "their own lives and responsibilities and are caregivers for their own aging parents" (internal punctuation removed) (ECF No. 439-2 at 9) and his niece, Kelly Manning, affirms the statement. ECF No. 455-3 at 1. Even if I accept this assertion, it does not address non-familial assistance that may be available to him. Peeler, Sr. describes himself as a 100% disabled veteran, which may make him eligible for long-term care services for disabled Veterans, including help with daily tasks in the home. VA Health Care, https://www.va.gov/GERIATRICS/pages/Homemaker_and_Home_Health_Aide_Care.asp (last visited April 11, 2024). Peeler has not demonstrated that releasing him is the only available option to provide care for his father in the home, when the day that he needs in-home care arrives.

### 2. Outbreak of Infectious Disease

The amended policy statement added a health emergency category, which applies when there is an "ongoing outbreak of infectious disease" or "an ongoing public health emergency." U.S.S.G. §1B1.13(D)(i). Peeler argues that his "incarceration continues to be exceedingly harsh and dangerous due to the health risks posed by the ongoing pandemic and other health risks." ECF No. 439-1 at 30. It has been nearly four years since the start of the COVID-19 pandemic

and vaccinations are widely available. *See* BOP Clinical Guidance, https://www.bop.gov/resources/pdfs/covid_vaccine_guidance.pdf?v=1.0.0 (Jan. 2023 version 19). "The opportunity for individually-identifiable inmates to opt to receive the COVID-19 vaccine represents a sea change from their previous COVID-19 infection vulnerability and inability to protect themselves against the virus, even with comorbidities. Evidence that a defendant has been offered the vaccine, whether he accepts it or not, demonstrates that he had the ability and opportunity to take measures to markedly reduce his risk of severe illness or death from COVID-19 while incarcerated." *United States v. Poupart*, 2021 WL 917067 at *1 (D. Conn. Mar. 10, 2021).

Regardless of whether Peeler has availed himself of the COVID-19 vaccine, he does not claim to suffer from any preexisting medical conditions that could put him at higher risk. In any event, he is not elderly – he is 47 years old.[1] The inmate population at McDowell FCI is more than 50% fully inoculated. Federal Bureau of Prisons statistics, Inmate COVID-19 Data; BOP Statistics: Inmate COVID-19 (last visited Apr. 16, 2024). Further, as of April 16, 2024, BOP Inmate COVID-19 Data for McDowell FCI reports zero open COVID-19 cases and zero COVID-19 related deaths. *Id.* McDowell FCI does not have an ongoing outbreak of COVID-19 and Peeler has no risk factors even if there were open cases at McDowell FCI. Peeler also cites a concern about "the emerging potential public health disaster that is the monkeypox virus," but he provides no facts suggesting that other inmates at McDowell FCI have contracted the monkeypox virus. ECF No. 439-1 at 30-31.

---

[1] The CDC recognizes age as a risk factor for COVID-19. "Risk of severe outcomes is increased in people of all ages with certain underlying medical conditions and in people who are 50 years and older, with risk increasing substantially at ages >65 years." Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19: Information for Healthcare Professionals | CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated Feb. 9, 2023) (last viewed Jan. 19, 2024)

Peeler has not pointed to anything in particular about McDowell FCI that puts him at increased risk of contracting COVID-19, Monkeypox, or any other virus. "General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release"); *United States v. Sattar*, 467 F. Supp. 3d 152, 156 (S.D.N.Y. 2020) ("[T]here have been no reported symptomatic cases.  Sattar's application thus amounts to mere speculation that there might be a COVID-19 outbreak … This kind of speculation is not a basis for compassionate release."). Peeler's fear of contracting a virus is not an extraordinary and compelling reason supporting another reduction in sentence.

 3. **Peeler's Youth at the time of his criminal conduct**

A district court may consider a defendant's age at the time of the offense conduct as an extraordinary and compelling reason. *United States v. Ramsay*, 538 F. Supp. 3d 407, 424 (S.D.N.Y. 2021); *see also* U.S.S.G. § 1B1.13 (extraordinary and compelling reasons may include "any other circumstances or combination of circumstances that, when considered by themselves or together with any of the reasons [specifically enumerated in the policy statement, i.e., medical circumstances of the defendant, age of the defendant, family circumstances of the defendant, and victim abuse by BOP personnel or contactor], are similar in gravity to [the specifically enumerated reasons].") Peeler pleaded guilty to participating in a conspiracy from January 1997 through January 1999 to possess with intent to distribute multi-kilogram quantities of cocaine base. ECF No. 80 at 1. Peeler was from 20 to 22 years old at the time of this offense. Peeler

refers to "factors that are relevant to the conduct of young people" and argues that a "not yet fully formed" character is "the most important element of this framework." ECF No. 439 at 23. He submits that, at this point, "his character has … fully formed over 23 years of hard work and difficult self-reflection" in prison. *Id*.

The drug offense for which Peeler is currently serving time, however, was not a product of rash immaturity, a momentary misjudgment of youth, or peer pressure. Peeler was a leader of the drug trafficking organization that he and his brother built over years. ECF No. 439 at 27. The Peelers' drug trafficking organization was a relatively sophisticated, lucrative scheme, which ran three shifts of workers; was armed with an AK-47, AR-15, and other firearms; operated around the clock; and used young women to serve as drug couriers and to rent apartments that were used as stash pads for drugs, weapons, and ammunition. ECF No. 390-5 at ¶¶ 41-44. The presentence report suggests that Peeler was an equal partner in the organization with his brother and that his actions were not a matter of succumbing to his brother's influence. Indeed, so determined was he to stay involved in the organization that in April 1998 he escaped from a halfway house to rejoin the group and used a false name to conceal his identity. ECF No. 390-5 at 9 ¶ 35. Nor was his involvement in the conspiracy to murder a child who was slated to be a witness against his brother, and the child's mother (for which he received, and has served a state sentence of approximately 20 years, consecutive to the federal drug offense), the product of youthful passion or impetuosity. The evidence suggests, instead, that it was a carefully planned, calculated effort to remove what was perceived as a threat to his brother's liberty.

To be sure, Peeler was a young man when these events occurred, and he has submitted ample evidence that he has matured and engaged in substantial and impressive rehabilitation efforts. But his relative youth at the time of his offense is not an "extraordinary" or "compelling" reason

9

to reduce his sentence for two reasons. First, as noted, these carefully planned offenses were not the type that one commonly associates with impetuousness, momentary misjudgment, peer pressure, dependence, and other characteristics of youth. Second, Judge Arterton, to whom this case was assigned before it was transferred to me, already took account of the defendant's youth at the time of the offense and his impressive rehabilitation efforts in reducing his term of imprisonment by twenty years in this case (from 35 to 15 years) when she granted his motion to reduce sentence three years ago under § 404 of the First Step Act. She necessarily considered Peeler's youth because it was part of his background and characteristics, which all federal judges must take account of at sentencing. *See* 18 U.S.C. §3553(a).

### 4. Combination of Factors

Even when these factors Peeler has raised are considered together, they do not amount to extraordinary and compelling reasons. Indeed, the three factors Peeler has raised do not come close to being extraordinary and compelling: the federal prisons are, unfortunately, full of inmates who, like Peeler, committed terrible crimes in their early twenties, received long sentences, are now in middle age, and have aging or sick parents. So adding these factors together does not make Peeler's situation "extraordinary" or "compelling." The feature of Peeler's case that comes the closest to being extraordinary or compelling is Peeler's very substantial rehabilitation, including well-documented good behavior, college courses, and mentorship to other inmates. But "rehabilitation … is not, by itself, an extraordinary and compelling reason," U.S.S.G. § 1B1.13, to reduce a sentence. In addition, Judge Arterton already rewarded Peeler for his rehabilitation with a twenty-year reduction in his sentence under § 404 of the First Step Act. Even if rehabilitation alone could qualify as an extraordinary and compelling reason, a further reduction of Peeler's sentence would not be warranted.

### C. Section 3553(a) Factors

Even if Peeler had presented extraordinary and compelling circumstances, the § 3553(a) factors would not support an additional sentence reduction because further reduction of his sentence would undermine the purposes of sentencing. *See* 18 U.S.C. § 3582(c)(1)(A) ("the court … may reduce the term of imprisonment … *after considering the factors set forth in section 3553(a)* to the extent they are applicable, if it finds that … extraordinary and compelling reasons warrant the reduction."). The relevant § 3553(a) factors to be considered are: (i) the nature and circumstances of the offense, (ii) the history and characteristics of the defendant, (iii) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment, (iv) the need to adequately deter criminal conduct, (v) the need to protect the public from the defendant, (vi) the need to provide the defendant with necessary rehabilitation, and (vii) the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a). As noted, Peeler has already benefitted from a twenty-year reduction in his original sentence – he will serve less than half of his original sentence. ECF No. 430 at 73, ln. 13. Granting this second motion for reduction of sentence would result in a sentence that was not sufficient to achieve the purpose of sentencing, including the need to reflect the seriousness of the offense and promote respect for the law.

As noted, Peeler and his brother ran a large-scale, well-organized drug-trafficking operation that sold multi-kilogram quantities of cocaine throughout Bridgeport, Connecticut. They were armed with dangerous weapons, and the state cases show that they were willing to escape from custody and kill others, including a mother and child, to maintain their positions and their very substantial profits. *See* ECF No. 448 at 2 (citing state prosecution describing profits from Peelers' drug sales); *United States v. Keitt,* 21 F.4th 67, 72 (2d Cir. 2021) ("the district court did

11

not abuse its discretion in concluding that … it would not reduce Keitt's sentence" when it "noted that Keitt had sold a large quantity of dangerous drugs over an extended period as part of his membership in a gang"). Even when the Peeler brothers were not killing witnesses, they were ruining lives in Bridgeport. *See* ECF No. 423-1. (In letter to the court, a customer of the Peeler drug trafficking organization describes how crack from the Peeler organization led him to lose all of his savings and to steal and cheat to obtain crack and led his wife to drop out of nursing school).

As for Peeler's background and characteristics, I have largely already discussed this factor. Peeler does deserve credit for his perseverance in mastering college courses and mentoring others while in prison, but he has received that credit. The revised sentence that Judge Arterton imposed less than three years ago "reflects the changes in the law, the changes in the man, [and the] harshness of his state incarceration conditions in COVID times." ECF No. 430 at 72-73, lns. 22-25, 1.  Judge Arterton reduced Peeler's sentence from 420 months of incarceration to 180 months. Peeler has served a small fraction of that reduced sentence. Further reduction of this sentence would not adequately reflect the seriousness of the offense or promote respect for the law.

## IV.  CONCLUSION

For the reasons above, I deny the Second Motion for Reduction in Sentence Under 18 U.S.C. §3582(c)(1)(A) (ECF No. 439).

IT IS SO ORDERED.

/s/<br>Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
       April 16, 2024